UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

GUNBOAT INTERNATIONAL, LTD,   CASE NO. 15-06271-5-DMW
                              CHAPTER 11
DEBTOR.

## EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

**COME NOW** GUNBOAT INTERNATIONAL, LTD. (the "Debtor"), by and through its undersigned counsel and pursuant to § 363 of the Bankruptcy Code, hereby respectfully moves this Court for an Order authorizing the Debtor to use cash collateral and, pursuant to Fed. R. Bankr. P. 4001(b)(2), in order to avoid immediate and irreparable harm to the bankruptcy estate, to hold an emergency hearing on this matter.

Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B), the Debtor sets forth the following introductory statement:

The Debtor is a corporation organized and existing under the laws of the State of Rhode Island. The Debtor's principal place of business is in Wanchese, Dare County, North Carolina. The Debtor designs and manufactures luxury performance cruising catamarans under the GUNBOAT brand. The Debtor was founded and has been in business for over fifteen years, when shareholder Peter Johnstone decided to redesign the sailboat, combining comfort and race boat technology, resulting in the first GUNBOAT model, the TRIBE in 2001, a catamaran built for both speed and long voyage ocean cruising. Since the introduction of the TRIBE in 2001, the Debtor has expanded the GUNBOAT brand to include the 40', 55', 65', 72', and 77' series, and has its first 78' series yacht in production. In 2015, Cruising World named the Gunboat 55 the "Domestic Boat of the Year" in its 2015 Boat of the Year competition. The Debtor's operations

currently employ approximately 57 employees, who are involved in the design, construction, and manufacture of the yachts and financial affairs of the Debtor.

The Debtor began to experience financial problems as a result of cost overruns in the manufacture of its 55 foot series, with the costs for design and manufacture of the first yachts produced in this series exceeding the sale price for some of the yachts under construction. While later yachts in the 55 foot series were profitable, the Debtor was unable to recoup sufficient proceeds from the later 55 foot yachts to offset the earlier 55 foot models. This led to the termination of several contracts that were in various stages of production. During this same time, the Debtor was forced to file a lawsuit against one of its boat manufacturers for defects in the manufacturing process and failure to honor the contractual warranty requirements. This caused the Debtor to expend substantial funds making repairs and honoring these warranties. The Debtor also had one yacht suffer damage during a test/photo shoot by a leading yachting magazine, resulting in negative publicity for the GUNBOAT brand.

The Debtor has downsized its operations and entered into modifications with certain purchasers in order to begin the process of restructuring its operations and return to profitability. Currently, the Debtor is producing one 55 foot yacht, has begun production of its first 78 foot yacht, and is in negotiations as to other pending and future contracts. The Debtor's revenue comes primarily from the manufacture and sale of yachts, as well as any commissions earned on the resale of yachts for which the Debtor acts as a broker. The Debtor anticipates a continuation of operations by way of this proposed reorganization and, in order to maintain existing operations and retain maximum value of its business, the Debtor will be required to incur certain operating expenses, including materials, software license payments, payroll, utilities, and other expenses. The Debtor's only source of income is through its continued business operations. The

Debtor's primary assets consist of the yachts it has currently under construction, its contracts to sell these yachts to purchasers, and the associated equipment, tooling, and materials related to the yachts in their various stages of construction.

In support of this *Emergency Motion for Authorization to Use of Cash Collateral* (the "Motion"), the Debtor shows unto this Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and it is core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

2. The Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on November 18, 2015 (the "Petition Date"), and currently operates as Debtor-in-Possession.

3. The Debtor is a Rhode Island corporation with its principal place of business located in Wanchese, Dare County, North Carolina.

4. Prior to filing, the Debtor entered into a promissory note, commercial security agreement, and business loan agreement with OBX Bank, A division of Monarch Bank ("OBX Bank"), dated September 10, 2015, in the original principal amount of $484,621.01. The note is secured by a security agreement executed by the Debtor, encumbering the Debtor's inventory, equipment, accounts, chattel paper, instruments, deposit accounts, investment property, and general intangibles, and all proceeds of the forgoing. In addition, Warship, LLC, a North Carolina limited liability company owned by the Debtor's shareholder granted OBX Bank a deed of trust on the real property upon which the Debtor operates as collateral, as well as a security interest in all of its personal property. The Debtor estimates that OBX Bank was owed

$487,094.59 as of the Petition Date.

5. Prior to filing, the Debtor entered into a promissory note and security agreement with Peter Johnstone, the Debtor's shareholder, for funds advanced to the company. Mr. Johnstone was owed $34,734.04 on the Petition Date.

6. It appears that the Debtor's cash, accounts, inventory, equipment, and intangibles, generated by its operations may constitute cash collateral of OBX Bank, as inventory is bought and sold in the ordinary course of business, within the meaning of § 363 of the Bankruptcy Code and according to their respective lien positions and priorities.

7. Section 363(c) provides that of the Bankruptcy Code provides that debtors may use cash collateral provided "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The term "cash collateral," for purposes of § 363, includes "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a).

8. In order to continue and maintain its existing operations, the Debtor will be required to incur certain operating expenses, including materials, utilities, payroll, insurance, and other operating expenses. The Debtor's sole source of income is through continued operations, the collection of accounts receivable, sale proceeds, payments made by purchasers, and any other income generated by the business.

9. The Debtor represents that a reorganization and continuation of its operations will generate the greatest source of funds for creditors. The Debtor will require access to the cash collateral generated by its operations in order to allow it to remain in business.

10. If the use of cash collateral is not immediately approved, the Debtor's bankruptcy estate will suffer immediate and irreparable harm, as it will not be able to pay its expenses from its sole source of income, the funds generated by operations. If the Debtor is unable to maintain constant cash flow, it cannot possibly succeed in bankruptcy. Federal Rule of Bankruptcy Procedure 4001(b)(2) provides, as follows:

> (2) Hearing. The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Pursuant to Fed. R. Bankr. P. 4001(b)(2), the Debtor respectfully requests a preliminary hearing before the Court authorizing it to use cash collateral as specified in this Motion.

11. The Debtor proposes that secured creditors whose cash is used shall have (i) a continuing post-petition replacement liens and security interests in all property and categories of property of the same extent, validity, and priority as said creditor held pre-petition. The validity, enforceability, and perfection of the post-petition replacement liens shall be immediately deemed perfected, without the need for any further action on the part of creditors.

**WHEREFORE**, and based upon the foregoing, the Debtor respectfully prays for (A) a preliminary hearing on this Motion in order that immediate harm to the Estate can be avoided, (B) an Order authorizing the Debtor to use cash collateral in accordance with 11 U.S.C. § 363, and (C) such other and further relief that this Court deems just and appropriate.

Respectfully submitted this, the 18th day of November, 2015.

# EXHIBIT

| GUNBOAT INTERNATIONAL LTD. | | | | | | | |
|---|---|---|---|---|---|---|---|
| CASE NO. 15-06271-5-DMW | | | | | | | |
| EXHIBIT A - CASH COLLATERAL BUDGET | | | | | | | |
| GUNBOAT | FUNDING & EXPENSE | | | | | | |
| Week Of | 11/16/2015 | 11/23/2016 | 11/30/2015 | 12/7/2015 | 12/14/2015 | 12/21/2015 | 12/28/2015 |
| 48 LINE MANPOWER | 25 | 25 | 25 | 25 | 25 | 25 | 5 |
| 55 LINE MANPOWER | 6 | 6 | 6 | 6 | 10 | 10 | 2 |
| TOTAL BILL HRS | 1,240 | 992 | 1,240 | 1,240 | 1,400 | 1,400 | 280 |
| BROADBILL LEASE BLDG 1 | - | | | - | | | |
| CASH ON HAND | 30,414 | 21,331 | 18,069 | 4,714 | 40,381 | 46,435 | 62,757 |
| INCOME | 59,520 | 47,616 | 59,520 | 59,520 | 67,200 | 67,200 | 13,440 |
| BROKERAGE INCOME | - | - | - | 100,000 | - | - | - |
| Total Income | 59,520 | 47,616 | 59,520 | 159,520 | 67,200 | 67,200 | 13,440 |
| Total Available Cash | 89,934 | 68,947 | 77,589 | 164,234 | 107,581 | 113,635 | 76,197 |
| PAYROLL & Payroll Taxes | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 |
| Aflac Insurance | 1,868 | | | 1,936 | | | |
| BCBS RJ Dental | 1,366 | | | 1,366 | | | |
| Office & Convenience | 300 | 475 | | | | 475 | |
| Century Link Internet | 160 | | 160 | | | | 160 |
| Charter Bus Phone | | | 712 | | | | 712 |
| Dare County Tax Department | | | | - | | | |
| Pier Vantage Account Soft | 5,331 | | | 2,665 | | | |
| Reed Oil Propane | | | | 3,000 | | | |
| Shoshin Technologies IT | | | 1,500 | | | | 1,500 |
| United Healthcare Insurance | | | 18,000 | | | | 18,000 |
| Verizon Wireless | | | | 800 | | | |
| ATT WIRELESS | 333 | | 500 | | | | 500 |
| Wesco Workers Comp | | | | 6,000 | | | |
| Dominion Power | 5,099 | | | 2,500 | | | |
| Insurance P&I | | | | 32,083 | | | |
| YACHTWORLD | 443 | | | | 443 | | |
| Stubbs Purdue | - | | | | 7,000 | | |
| Mobile Mini Containers | | | 1,600 | | | | 1,600 |
| CONSOL DEBT P&I $14K/QTR | | | | | | | |
| OBX NOTE | 3,300 | | | | 3,300 | | |
| WARSHIP LEASE $22K NET $0 6.5 MO | - | - | - | 22,000 | - | - | - |
| JEFF ADAM ACCOUNTANT | | | | | | | |
| JBC GROUP | 2,403 | 2,403 | 2,403 | 3,503 | 2,403 | 2,403 | 2,403 |
| Total Expenses | 68,603 | 50,878 | 72,875 | 123,853 | 61,146 | 50,878 | 72,875 |
| Weekly Profit/(Loss) | (9,083) | (3,262) | (13,355) | (64,333) | 6,054 | 16,322 | (59,435) |
| Net Cash | 21,331 | 18,069 | 4,714 | 40,381 | 46,435 | 62,757 | 3,322 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

GUNBOAT INTERNATIONAL, LTD,   CASE NO. 15-06271-5-DMW
                              CHAPTER 11
          DEBTOR.

## NOTICE OF EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL

PLEASE TAKE NOTICE of the EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL (the "Motion") filed simultaneously herewith on behalf of the Debtor in the above captioned case; and,

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no response and request for a hearing is made by a party in interest in writing to the Clerk of the United States Bankruptcy Court for the Eastern District of North Carolina no later than 11:00 a.m. on November 19, 2015; and,

FURTHER NOTICE IS HEREBY GIVEN, that a hearing will be conducted on the Motion and any response thereto on November 19, 2015 at 11:00 a.m. at the United States Bankruptcy Court, Eastern District of North Carolina, Federal Building, 3rd Floor, 301 Green Street, Fayetteville, North Carolina.

DATE OF NOTICE: 11/18/2015          **STUBBS & PERDUE, P.A.**

                                    BY: s/Laurie B. Biggs
                                    LAURIE B. BIGGS, NCSB No. 31845
                                    lbiggs@stubbsperdue.com
                                    9208 Falls of Neuse Road, Suite 201
                                    Raleigh, North Carolina 27615
                                    TEL: (919) 870-6258
                                    FAX: (919) 870-6259
                                    Attorneys for Debtor